**BOARD OF DRAINAGE COM'RS OF McCRACKEN COUNTY, for Use of MAYFIELD CREEK DRAINAGE DIST. NO. I, v. FLETCHER et al. (two cases).**

Nos. 2739, 2752.

District Court, E. D. Illinois.
Sept. 30, 1933.

A. E. Boyd, of Paducah, Ky., and C. E. Feirich, of Carbondale, Ill., for plaintiff.

Wheeler, Wheeler & Shelbourne, of Paducah, Ky., and Dewey & Cummins, of Cairo, Ill., for defendants.

WHAM, District Judge.

The defendants have filed their demurrers to the respective declarations in the above cases, and the questions therein raised, being identical in both cases, are before the court for determination.

In this brief memorandum I will not attempt to set forth the entire factual situation stated in the declarations or the numerous sections of the Kentucky Statutes involved of which the court takes judicial notice. It will be sufficient to say that these are actions in case brought by the plaintiffs to recover from the defendants damages alleged to have been wrongfully caused to the plaintiffs' lien upon certain lands located in Mayfield Creek Drainage District No. 1, specifically described in the respective declarations, for special assessments duly assessed against said lands by said drainage district under the statutory laws of Kentucky, through the cutting and removal by the defendants, while owners of said land and after the said assessments had been duly levied against it, of the timber growing on said land. It is alleged in the declaration that the assessments secured by said lien were payable in twenty-seven annual installments in the years 1921 to 1947, inclusive; that the first five annual installments, up to and including the installment for the year 1925, were paid as they fell due, and the remaining installments are unpaid; that by deeds recorded September 15, 1925, and July 23, 1926, the defendants became owners of said lands subject to the lien of the plaintiffs for the unpaid installments; that during the period of six years immediately following the acquisition of said lands the defendants, without paying any of the installments falling due after the year 1925, cut and removed the timber from said land for their own use and benefit thereby damaging and depreciating the plaintiffs' lien on said land to such an extent that said lien was destroyed and rendered worthless. The plaintiffs seek to recover the value of the said lien thus alleged to have been damaged and destroyed by the defendants, including its value as security for all of said installments past due and to become due in the future.

The plaintiffs' demurrers are both general and special. The points raised by the special demurrers have been abandoned, and there remains only the question presented by the general demurrers as to whether the plaintiffs' respective declarations state any cause of action.

It would seem from the provisions of the drainage statutes in the state of Kentucky that drainage districts in that state have power and authority to maintain any suit necessary to their proper protection and administration, and I have no doubt the plaintiffs here have the statutory power to bring and prosecute these actions. Moreover, I have little doubt that since the actions are for damages to plaintiffs' lien and not for damages to the land itself they are transitory rather than local in nature and, if maintainable at all, may properly be brought wherever one of the defendants resides and service may be had upon him.

The principal question here involved is whether the declarations make out an action in case against the defendants for damages to its lien. Undoubtedly, under the numerous authorities cited by the plaintiffs, wrongful damages to a lien may ordinarily be recovered from the wrongdoer in an action on the case. Are wrongful damages caused by the defendants to the lien of the plaintiffs shown by the facts alleged in the declara-

tions? The determination of this question requires a consideration of the nature and effect of the lien given the district by the statutes to secure the assessments against the land involved.

■ The lien is purely statutory and its nature and effect is controlled and determined by the purpose of the statutes creating it. The lien and the assessments it secures are bottomed upon special benefits accruing to the land itself. Undoubtedly the lien at the time it attaches and at any given time thereafter covers not only the soil itself, but everything on or in it such as the buildings, growing things, and the minerals beneath, that from time immemorial have been held to be a part of the land. A sale of the land for unpaid assessments would give title not only to the soil, but to everything affixed or attached thereto at the time of the sale.

■ Does this necessarily mean that during all the time there remains any unpaid assessments of this nature against the land the rightful owner thereof must maintain the land in precisely the same condition and situation with respect to things attached to or growing on the soil, and the minerals beneath, in which it was at the time the lien attached? That he cannot remove any buildings or timber or minerals without being subject to suit for damages to the lien? If the answers to the foregoing questions were in the affirmative, it would mean that at no time, in this specific case, from 1921 to 1947, could the owner cut and remove any timber from the land if in doing so he thereby lessened or depreciated the value of the land, thus impairing the value of the lien. It would mean that at any time the owner did anything on the land which owners customarily do which might be looked upon by the commissioners as depreciating the value of the lien, he would be subject to a suit for damages. I cannot believe that the lien was intended to be of this far-reaching and oppressive nature without specific provision therefor in the statutes. It seems more reasonable to construe the intent of the Legislature of Kentucky to have been, and the meaning of the statute in question to be, that the lien for drainage district assessments should attach to the land in its entirety, but by reason of the nature of the assessments and the long period of thirty years over which the lien may run, that the lien is subject to the right of the owner to use the land as a normal landowner would use it. Such use, it seems to me, would properly include, where timberland is involved, cutting and disposing of the timber growing on the land whenever he deemed it advantageous to do so, whether for the purpose of realizing upon the timber or for the purpose of clearing the land for agricultural purposes.

The basis of the drainage assessments against the land is the benefits found to have accrued and to accrue to the land itself from the drainage project, and the lien necessarily extends to the buildings, growing timber, and other appurtenances of like nature because they form a part of the land. To interpret the statute to mean, however, that the lien upon timberland prevents the timber from being cut without the owner becoming a wrongdoer, in this case, for a period of twenty-six years, would certainly operate to the detriment instead of the benefit of the owner, and would cripple him in his normal use of the land in a way that I feel was not intended by the makers of the law, or necessary to its proper interpretation. It would operate as a discrimination against owners of timber and mineral lands and in favor of owners of purely agricultural lands such as could not have been intended without special mention in the statute or provision therein to meet the situation.

It may be urged that when the timber in question was cut there were past-due assessments unpaid, and these suits should be maintainable for the amount of such past-due assessments. As to such past-due assessments the plaintiffs had their remedy for protecting their lien on the timber in the local courts of Kentucky as indicated by the decision in Board of Drainage Commissioners of McCracken County v. Alexander, 235 Ky. 689, 32 S.W.(2d) 22, or perhaps by injunction such as was instituted in the inception of the proceedings in Lancaster County et al. v. Fitzgerald, 74 Neb. 433, 104 N. W. 875, or by a sale under the statute. But having stood by and permitted the owner of the land to cut and remove the timber, as he would have had a perfect right to do but for the unpaid assessments, I am of the opinion that the plaintiffs may not come now and maintain actions for damages to the lien by reason of such unpaid assessments. Nor can I conceive how, on principle, an action in case for damages to the lien, considering its nature, can be maintained to the extent of assessments past due when the timber was cut if it cannot be maintained for damages to the lien as security for the protection of all the assessments.

In accordance with the views herein expressed, the demurrer to the declaration in each case must be and is hereby sustained.